McKinney, J.,
delivered the opinion of the Court.
This suit was commenced before a Justice, against Cantrell *472 and wife, to recover the value of a horse beast, the property of Colwell, alleged to have been destroyed by the procurement of the wife, in her husband’s absence.
On appeal to the Circuit Court, the plaintiff recovered judgment for fifty dollars.
The material facts are as follows: In September, 1858, the plaintiff’s mare jumped over the fence, within the defendant’s enclosure. The defendant, James Cantrell, was from home at the time; and his wife, being unable to turn the mare out, requested one John Cantrell, a family relative, who happened to he passing by, to turn the beast out, and he agreed to do so. After trying in vain to catch the mare, and after pursuing her round the enclosure for some time, said John Cantrell threw a rock at the mare and broke one of her fore-legs. No opening was made in the fence for the mare to pass out at, until after the injury was done, when he laid down the fence, and led her out.
The question is, whether, under the circumstances, Cantrell and wife can be made liable for the injury?
So far as regards the authority of the wife to employ an agent to put the mare out of the field, we think there can be no question. Of necessity, it must be held that the wife, in the absence of her husband, has an implied authority, at least, to take all proper and necessary steps to protect his property from destrnction or injury.
The case must be governed by the general principles applicable to the relation of master and servant, or principal and agent — for the law, as to both relations, is based upon the same principles and analogies.
A master is generally liable to third persons, in a civil suit, for the tortious or wrongful acts of his servant, if these acts are done in the course of his employment in his master’s service.
This rule is one of general application ; and it makes no difference that the master did not authorize, or even know of the servant’s wrongful act, or that he forbade or disapproved of it. In all such cases the master is liable, provided the act *473 of the servant be done in the course of his employment, and within the proper scope of the authority confided to him. The maxim applies, Respondeat superior. The master holds out the servant as competent and fit to be trusted, and, in effect, undertakes for his good conduct within the proper range of the authority expressly or impliedly confided to him.
But, it is well settled that the master is not answerable for the wilful and unauthorized acts of the servant, if they be done, not in the execution of, but altogether aside from the authority given by the master; unless they are subsequently ratified or adopted by him, for his own benefit. Beyond the scope of his employment, the servant or agent is, in contemplation of law, as much a stranger to his master as any third person. The master does not undertake for the conduct of his servant beyond the scope of the authority entrusted to him; and, consequently, his wilful and unauthorized acts cannot be regarded as the acts of his master. Blackstone lays down the rule thus: If a servant, by his negligence, does any damage to a stranger, the master shall be answerable for his neglect. But the damage must be done while he is actually employed in the master’s service; otherwise, the servant shall answer for his own misbehavior. 1 Bl. Com., 431; McManus v. Crickett, 1 East, 106; Smith’s Master and Servant, p. 151 to 162; (2 vol. Law. Lib., sixth series.) And the principles apply in the ease of principal and agent. Story on Agency, sec. 452, 456.
In the cases upon this subject, some nice distinctions are presented, as respects the question, how far the servant was acting in his master’s service, or within the scope of his authority, at the time the injury was done; and though the principle is clear, it is sometimes difficult of application to the facts of a particular case.
The wrongful act of the servant may, in certain cases, be said in some sense to have been done in the course of his employment in his master’s service; and yet, in no proper sense, was it within the scope of the authority given him by the master. And, notwithstanding the apparent confusion to be met *474 ■with in some of the eases, the distinction is clearly enough llustrated in the books, between an injury to a third person, arising from the negligence or unskilfulness of a servant, who really had no other purpose, at the time, but the execution of the duty confided to him by his master: and a similar injury, resulting from the wilful and unauthorized act of the servant, not done in execution of his master’s orders, but altogether aside from the authority given him, and prompted, perha.ps, by his own malice, or wilfulness, or other improper motive.
The distinction is sufficiently illustrated, perhaps, by the case of Puryear v. Thompson, 5 Hum., 397, without taking time to i*efer to numerous other cases upon the subject.
Upon these principles, we think it clear that the present suit cannot be maintained. The request to turn the mare out of the field cannot be tortured to imply an authority, or command, to injure or destroy the animal in doing so. The fair inference would be exactly the reverse of this. The act of violence, by which the loss was occasioned, was not done in execution of the authority given; but was altogether beyond it, and must be regarded as the wilful, wanton, and unauthorized act of the servant, for which he himself, and not the defendants, must be answerable.
It cannot be assumed, upon the proof in this record, that Mrs. Cantrell was present, assenting to the act of violence— whatever effect that fact might have, if established. True, she was at home, in the house; but there is no proof that she assented to, or even knew of the violence resorted to, until afterwards. Whether, if the fact were otherwise, the husband’s liability would be affected thereby, we express no opinion.
The supposed subsequent approval of the act of the servant in injuring the mare, by Mrs. Cantrell, is not sufficiently proved; and, if it were, we doubt whether it would be admissible to charge the husband.
The attempt to bring this case within the principle appli *475 cable to tbe negligent act of a servant, in the course of his employment, is a misconception of the true character of the case.
The judgment is erroneous, and it will be reversed.